CITY OF SPRING VALLEY

V.

C. HENNING.

*Dram Shops—Ordinance—License—Agency—Instructions.*

1.   The provisions and not the title of a given ordinance must be looked to in order to see to what class of persons it applies.

2.   There is no such thing as an agency in crime. The employer is as guilty as the agent, and is an accomplice before the fact, and under the law, a principal as to what he does by his agent.

3.   In an action brought to recover for an alleged violation of a municipal ordinance against selling liquors without a license, the defense being that the liquor sold, was sold and delivered in a neighboring city, this court holds, in view of the evidence and the giving of certain erroneous instructions, that the judgment for the defendant can not stand.

[Opinion filed December 7, 1891.]

APPEAL from the Circuit Court of Bureau County; the Hon. CHARLES BLANCHARD, Judge, presiding.

Messrs. ECKELS & KYLE and A. R. GREENWOOD, for appellant.

Messrs. GIBBONS & GIBBONS and J. L. MURPHY, for appellee.

LACEY, P. J.   This suit was commenced November 11, 1889, before a police magistrate in the city of Spring Valley to recover for an alleged violation of an ordinance of the appellant against selling spirituous, malt, vinous, mixed or fermented liquors in quantities of one gallon or more, at any time, within the limits of the city, without first having obtained a license for that purpose, under a penalty of not less than $25 nor more than $100 for each offense.   The ordinance was entitled, "An ordinance in relation to wholesale liquor dealers," and was passed and approved June 7, 1889, and published in a newspaper printed in said city on the 15th day of June, 1889.   The cause was tried by the police magistrate resulting in a fine of $100 against the appellee, who appealed the case to the Circuit Court, where a trial was had resulting in a verdict in favor of appellee, and the case is appealed to this court.

The evidence is not voluminous or contradictory.   It is conceded that no license was ever secured by the appellee, but it is contended that appellee sold no malt liquor within the corporate limits of the appellant city, but what beer was sold was sold in the city of Mendota, Ill., and there delivered.   The ordinance was introduced in evidence and proof of sales claimed to be in violation of the statute.   It appears from the evidence that appellee resides in the city of Mendota; that he has been manufacturing beer since 1866, and sells his own beer, and owns in Spring Valley a hotel, ice house, barn and store.   The ice house is for selling ice and keeping beer for delivery. When people want beer they communicate with the Mendota office.   Then appellee makes his bargains and ships the beer. He stores his beer in Spring Valley.   Makes sales at the office

from letters and instructs his agents to make bargains.   The appellee kept a man and team to deliver beer to his customers. He had several agents there, Kelley and others. The above appears from appellee's own testimony and has reference to his manner and system of selling his product in the city of Spring Valley.   It appears also from the evidence introduced on the part of the appellant, to wit, from the testimony of John Budnik, who kept a saloon in Spring Valley in 1889, that he bought of "Tom," the agent of appellee, in Spring Valley, beer, which is a malt liquor, in July, 1889, three quarter barrels; in August, 1889, fifty-three quarter barrels and six "eighths" of barrels of beer, and in September, 1889, forty-five quarter barrels and six "eighths" of beer.   This was all in Spring Valley, Bureau County, Ill.   The mode of doing business was, that appellee keeps an ice house, a team, and has an agent in Spring Valley.   When the agent came around in the morning the saloon keeper, Budnik, told him how much he wanted and the agent delivered it.   Sometimes Budnik paid appellee, sometimes his son, sometimes Kelley, another agent. Staunton, another saloon keeper, bought beer from appellee during the months of July, August, September and October, 1889, in quantities prohibited by the ordinance, of the agents of appellee, under a similar system as did Budnik, and it was delivered.   The orders were taken by the agent and delivered by him to Staunton in Spring Valley.   None of this evidence was contradicted and seems to have made out a clear case for recovery.

The contracts or orders for sale were made in the corporate limits of appellant, and the beer delivered there by appellee through his agents.   No beer was delivered in Mendota, or pretended to be, nor sale took place there, though it may have been some of the negotiations for the sale took place there, but the sale and delivery was finally consummated in Spring Valley.   If the beer had been put up in packages and shipped to the saloon keepers in Spring Valley, the delivery would be held to have taken place in Mendota, or if the beer had been delivered to the agents of the saloon keeper outside the city limits of Spring Valley, the sale would not take place

in Spring Valley. But here, the beer was not only delivered in Spring Valley, but it was kept there by appellee in store and for sale. There is no claim that any one owned the beer while in store in appellee's ice house in Spring Valley, save the appellee himself. What pretense can there be that the beer was sold in any other place than in Spring Valley? The fact of storage, however, is not controlling. If appellee had sent wagons from Mendota loaded with beer and sold and delivered it in Spring Valley to saloon keepers or other parties there, it would have been a violation of the ordinance. What one does by his agents, he does by himself. There is no such thing as an agency in crime. The employer is as guilty as the agent, and is an accomplice before the fact, and under the law, a principal. It matters little what the instructions were. There should have been a recovery by the appellant under the undisputed evidence in the case. Instructions given by the court for appellee, number five and number six, were erroneous. The fifth instruction tells the jury that "if the sale was made in the city of Mendota and the beer afterward delivered by an employe of defendant, and the money collected therefor within the city of Spring Valley, then the delivery of the beer and collecting the money as aforesaid would not be a violation of the ordinance." In the first place, there was no evidence on which to base this instruction. There was no evidence of any sale in Mendota. The beer was stored in Spring Valley and was the property of appellee, without dispute, until it was sold and delivered to the saloon keepers on their orders in Spring Valley. The delivery of goods is ordinarily an essential element of sale. Sometimes it is true a sale may take place as between the parties to it, and the title pass, if such was the intention, without delivery. This seldom occurs, and a delivery is generally regarded in law as the completion of the sale. In this case the title to the beer, according to the evidence, did not pass until the final order for the beer and delivery. The sixth instruction holds, and so informs the jury, that if the contracts were made prior to the passage of the ordinance for the beer, then the delivery afterward would not be a violation of the ordinance. This was

also erroneous. In the first place, there is no evidence of any contract before June, 1889, and then a contract is not a sale, it is a bargain for a sale—a contract to sell. The ordinance did not prevent the carrying out the contract, if one had been made, for the beer could have been delivered inside the city, provided appellee had taken out the license required. All of the seventh, appellee's instruction, except the closing three lines, where it tells the jury it could not find defendant guilty if he did not sell beer in Spring Valley between the dates of time the ordinance was in force and the commencement of the suit, is immaterial and misleading. There was no error in refusing the third and fifth of appellant's instructions. The third mentions no quantity of beer. A sale, to make it illegal, must be of a quantity prohibited by the ordinance; so the instruction was not accurate. As to the fifth refused instruction, we think it was properly refused for the reason there was no evidence of any purpose of evading the law. The only question legitimately before the jury was as to whether there had been illegal sales by appellee of malt liquor in the city of Spring Valley within the prohibition of the ordinance. The other points made by appellee's counsel against the validity of the ordinance and the power of the corporation to pass it, we do not think well taken, and hold the ordinance valid. The title of the ordinance, we think, can make no difference. We must look to the provisions of the ordinance to see what class of persons it touches, and not the title. The constitution requires no title in the case of an ordinance of a municipal corporation. The $3,000 bond required of those who should take out a license, was intended to be a statutory bond, and one given according to the provisions of the statute would have been sufficient. No bond was ever tendered by appellee, nor was any attempt made to take out a license. The corporation of appellant undoubtedly had the power to fix the amount of the license fee. If that section of the ordinance was void because there was no payee required by its terms, the other parts of the ordinance would stand without it, and all appellee would have been required to do to procure a license, would have been to have paid in the fee required by Sec. 2, and to have

applied to the clerk and presented the treasurer's receipt for the license money as required by Sec. 3.

For the above reasons the judgment of the court below is reversed and the cause remanded.

*Reversed and remanded.*